The next case call for oral argument is in the Matter of the Estate of Elsa Ford. Counsel, you may proceed whenever you're ready. Counsel? Good morning, Your Honor. Good morning. This is a fairly straightforward case. Basically, it amounts to a claim by a person who's an attorney or executor, both for the estate, who submitted a claim for fees. The claim was objected to by the other side, by the estate, and a hearing was held. A report was made by an expert, and the amount of fees was reduced. The original claim wanted 549.75 hours and a total dollar value of 97.817. That was the original claim that was submitted to the court. Before the hearing, an expert, Mark Bell, was hired. He reviewed the billing records, and he came up with an opinion that the correct amount to be awarded was $726,230. It was that amount that the circuit court, Judge Kimmel, awarded, the exact amount that the expert had recommended. So the original claim, actually there were two original claims. One was for 80-something thousand, and then it was amended up to 97. But the bottom line is what the circuit court allowed was about $26,230. So our contention is that that amount is too low, that it was manifestly erroneous to reduce the original claim here, the 84,000, that was ultimately amended up to $94,000, to reduce that original amount to this far lesser amount. And the basis of our claim is simple. The original claim, and that's the one I'm going to focus on, submitted a claim for 549.75 hours. Mr. Ballard went over that claim in great detail. He went through every single charge, and that's all in the record. He went through every single charge and made his personal assessment of the amount that should have been. At one point he made two assessments, really. All of the original 549 hours was billed at $150 an hour. That was the basis. And then when the bill was amended, it was still billed at $150 an hour. There's some expenses in there. Nobody's disputing the expenses. Everybody's good with the expenses. There was only, I think, originally $1,667. They got $1,682. But there's not much dispute about the expenses. It's all about the effort. So we started with 549 hours. The amended claim had 592 hours. Ballard went through all of those hours, and he looked at two things. One, he sought to determine whether those were executive hours or attorney hours. And two, he sought to determine whether that number of hours was justified. So that's how he treated this thing. So he went through the whole thing, and he came up for attorney hours with 144.05 hours for attorney hours. And as to those hours, he said $150 an hour was fine. So that part is good. As to the remaining hours, he reduced those to 139.1 hours. He said they're 139.1 executor hours. And he said those were properly billed at $20 an hour. Now, in the midst of that, 266 hours just disappeared into thin air. He just got rid of those. He said they were excessive or whatever. There's a lot of talk in here about time spent driving by the house and checking on the house, and that's one of the contested issues, whether or not the time that he was checking on the house, whether or not that time was justified. But what's interesting is that the expert never reduced those hours, even though the house wasn't that far away. And perhaps we could argue that less time should have been spent. I would argue that most of the hours that disappeared are just a result of rounding. When you go through the billing records originally, Charlie Heiss, my client, the executor and the attorney, he's billing basically in hour increments. Every now and then he goes down to a half hour. Once or twice he goes down to a quarter hour. But that's the way he was choosing to bill. He was using those kinds of increments. The expert uses one-tenth increments. Well, you can do that. I mean, we all have different ways in terms of our time, whether we're going to use a tenth or a third or a quarter or a sixth or whatever. You can use whatever number you want. But he didn't reduce. So a lot of the reduction seems to be getting rid of the rounding. But he doesn't seem to really say that the time spent driving by the house was excessive. He simply characterized it as executor hours. Then he turns around and he charges $20 an hour for the executor hours. And that's really where the big reduction came from. One, we reduced the number of hours. Two, we characterized many of them as executor hours rather than attorneys. How much was it for the executor hours? Well, in the end, the amount for the executor hours, I think, was like $27. I mean, how much per hour? $20 an hour. $20 an hour. $20 an hour. Okay. And one aspect of this is that's for the executor hours as Mr. Ballard saw it. In other words, in terms of Mr. Ballard's assessment, there were 139.1 executor hours that were spent. And he allows $20 an hour for those executor hours. Now, if we look at the total number of hours in the original claim that were not, as a matter of fact, attorney hours, it's more like 400 executor hours. If that's the case, then we're getting, I think, $2,732 for those executor hours. We're giving Mr. Hines $7 an hour. That's below the minimum wage now, which I think was about $7.35. So even the $20 an hour for an educated man, they make the argument, Mr. Downing makes the argument that, well, that's what it's worth, the $20 an hour. But $20 an hour for an educated man is not much, to put it mildly. Are you suggesting that it's customary in Southern Illinois for the executor fee's hourly rate to be the same as the attorney fee's hourly rate? No. And that both of them would be $150? No, sir. I've never seen a case where the executor charged $150 an hour. Not that there isn't one out there, but I'm just not personally aware of one. No, I'm not suggesting they should be the same, sir. What I'm suggesting is that that's the dollar amount that was billed. It's like if we go out and hire a plumber, and some plumbers cost more than other plumbers. And the plumber sends a bill, and the bill may be at a far higher rate than you or I might have thought was reasonable, or however we would have suspected. But ordinarily, that's not a justiciable matter. That's the amount that was charged. And I would argue pretty much the same thing here. You're saying if you get a plumber to your house and he gives you, to fix a leak in the faucet, and he gives you a $10,000 bill, you've got no recourse other than just to pay? If it's that high, you have a recourse. If it's that high, believe me, I would not. I would not be paying. Why are you arguing portal to portal, then? Pardon me? Why are you arguing portal to portal? Because he's paid on his way to the job, do the job, and he's paid on his way back. Or is that in the 20? Well, that's somewhat unclear. Since the hours seem to have been allowed in their entirety, particularly the drive-by of the house, I think the only way we can get that in the vicinity of an hour is port to port. I don't know how much time was actually spent observing the house, but neither did Mr. Bell. None of us did, because we weren't there. But those amounts were never reduced, interestingly enough. But I do think, and I mentioned this in the brief, in Carbondale, and I know this was a personal experience with rental properties, they're very strict on the mowing. Could a nuclear physicist or the world's greatest brain surgeon or whatever that was having to be the executor for his neighbor's estate, could he charge $500 an hour executor fee for the same duties? The theory that he had education in his time justified that kind of an amount. At some point, John, it's got to be, I think we all agree, there's some sort of point where it's got to be, the court has to step in. It has to be reasonable. But the substituted amount here is not reasonable either. If Mr. Hines, or Charlie Hines' time, because he's basically a practicing attorney, or was at the time, I guess, still is or not, was important, he didn't have to continue as executor. He could have said, wait a minute. I know that it's customary for executors to only get $20 or $30 or $50 an hour. I'm worth more than that. I don't want to be the executor, and still retain the attorney function for the estate. Could he not have? He could have done that, but he wasn't required to. And that certainly was an option he could have pursued. He could have hired some kid to drive by the house if all he's going to do is check on the grass, which to me is a legitimate concern to make sure you don't get those mowing tickets. And I think that is a legitimate reason to be checking regularly and see if those heaps going out in the winter are various things. He could have, but I don't think it's unreasonable to have continued the way he did. And I'm particularly concerned about the $20 an hour, which is just as arbitrary as the $150 an hour. That's just a number picked out of a hat to say that an executor fee is $20 an hour. Did Mr. Ballard testify to what a reasonable executor's fee would be in Illinois? He said something about that. He certainly said about what the reasonable attorney fees would be. And he said something about that, but he never really had any basis for it. He just comes up with that number out of the air. Like a lot of experts do. Like a lot of experts. And I think where he got it from was saying, well, that's what it would cost to hire a kid to drive by the house. Well, actually, you might be able to hire a kid for a little less if that's the criteria you're going to use. But, yeah, I think it just came out of the blue. It's just a number that he pulled out. Interestingly, one of the things he did do was he did look to the values of the state. He said that 5% was a reasonable guideline. We all know you're not supposed to do it on just a percentage basis. But it's not unreasonable to look at the percentage. Perhaps it's kind of a guideline to see if the fee is in the ballpark. That would have got us at least twice as much as the $26,000 that was eventually awarded. But my final thought on this, Judge, is that when all is said and done here, the way the order was characterized is that attorney's fees and expenses are worse to that effect. Well, that means there were no executive fees awarded at all. Now, D'Effley argues that that was a scrivener's error, that the court should have said something more. But I'd say it wasn't a scrivener's error. It's clearly based on what Ballard said. Ballard said that these are attorney's fees, and the court simply adopted Ballard's opinion. Basically, the exact amount that Ballard recommended is the exact amount that the court adopted. But that leaves effectively with either no executive fee, or probably more accurately, $2,732, the $20 an hour kind of fee, which really comes out to $7 an hour if you take all of the remaining hours. So that's where our argument of manifest error comes from, is that we simply threw away almost $70,000 in the end and did so completely arbitrarily. Was any of the time that Attorney Hines billed attributable to time after he was discharged? But that wasn't in this thing. Yes, it was, and I looked carefully to see if any of that was in the 26-230, and I think the fair answer, the exact answer to that, and I re-looked this morning because I was concerned about that also. The original claim ran up through 829.07. Now, a tiny bit of that is after he was discharged in that original claim. You would admit that he would definitely not be entitled to any fees, whether he's been... I would, Your Honor. After he was discharged. And that's why I looked this morning, because I thought the court would be... The record will show it one way or another, but for sure, any time spent after he was discharged is not compensable. And as I say, I looked, and I got the exact answer to that, because as I said, I thought the court might ask that question, and I share Your Honor's view that you can't charge for administrative state when you're no longer an administrator. In the original claim, the original claim that was submitted contained charges to 829.07. I think it was discharged in 8207. The subsequent bill, and that's why I haven't been talking here about the later bill, the bill for 592 hours that sought $97,000, because a lot of those were hours that were spent clearly after he'd been discharged, and I don't want to argue to the court that he ought to be compensated for those hours, because he's not the administrator anymore. He's not an administrator anymore. And so I'm trying to focus on the original claim. Now, as to the original claim, I wondered there, too, about that in terms of the hours. And I went through Mark Valor's, the experts thing here, and he actually allowed some of the hours as attorney's fees after Charlie was discharged from this case. He allowed not a lot of them. He, 13, 14, looks like about 14 hours he allowed that were after he had been discharged from the case. One other question, counsel. Yes. Part of it was about the surety bond. Yes. Right? He wanted, that was an expense, so I assume the estate challenges. Yes. Right? Yes, it did. Could you explain to me the purpose, the need for the surety bond when I think the will said no bonds required? In all candor, I think the quick answer to that is I stayed away from that issue because I cannot. And I researched the statute. There was actually no surety bond. What there was was Charlie's personal surety. In other words, his guarantee that he would make any losses good, as I understood it. The value of the surety bond was arrived at by calling Country Company's insurance company and asking how much a comparable bond would cost were one to purchase that bond from Country Company's insurance company. That's just one call, so I don't even know if that's the going rate. But that's what I understand to be the rate. But that's why I stayed away from that argument here as well, Your Honor, because at bottom, I looked at the statute, and I think the bottom line is that when the will says no surety required, it's like if I went to your house and installed a new roof and then sent you a bill and you knew nothing about it but didn't know I was going and didn't want a new roof, and then I sent you a bill. And so that's why I stayed away from it.  Thank you, counsel. Counsel? Counsel, you think this should probably be an opinion so we can set a $20 as a good fee. I think that would set precedent for the Fifth District. In all candor, Your Honor, counsel, I'm not discussing it. I really don't think this is anything but a Rule 23 order. Well, except for fees. $20 an hour for co-executors I think is probably appropriate, but that's what the testimony was, that's what the evidence was. But if you put $20 out there with the rate of inflation as what it is, you may have some heat coming your way. And you won't have broken windows that you're offering. We may give it more than $2 an hour. Now, was there some reason why the appellant didn't present his experts to show that the normal executor fee could be in the range of $25 to $100 an hour or something, to give the court some leeway there? Sure, yeah, I think you pointed it out with the executor, with the expert fees and expert testimony. The short answer is pure speculation on my part. This was Charlie representing himself, per se. Did he represent himself? I assume at all. Per se, at all. Bill got involved after the appeal was taken. So, no, he didn't introduce any testimony on executive fees. In fact, he didn't even testify. It's in the record. He didn't testify as to the amount of the executive fees. He didn't say, in my opinion, as an expert, myself, I believe executive fees should be this amount. Following up briefly with counsel's comments, well, $20 is just not right for a man of this education. Judge, you hit it on the head that this guy is a nuclear physicist or a Ph.D. or a medical doctor, and he's driving by a house to see if the lawn's mowed. Do we give him $30 an hour because he's a smarter guy than another guy who can do the same job who doesn't have the education? It's nonsense. You've got to use reason based upon what you're doing. Basically, what I'd like to address is just simply we've addressed everything in the briefs. I'm not going to delay with this, but I think there's four points I wanted to cover today on this matter. One is I think the amount of fees was unreasonable. That is the charge of $150 an hour for a co-executive fee. Two is the amount of time expended I think was unreasonable. Three is, as the court pointed out, as counsel just conceded, the idea of making a claim for a bond that was not required was outrageous. Fourth point I wanted to briefly address is the fact that you can't, and I believe counsel conceded this, you can't sit there and make a claim against the state for your own personal benefit, which is adverse to the estate. An example, geez, the court removed me as co-executor. I'm filing a motion to reconsider and then file a claim against the estate for the time and expense you did in preparing for a hearing on that. Reviewing the motion to remove you and doing some research, that's just not right. I just thought I heard opposing counsel concede that point there that he's Yeah, I don't think that's going to be an issue. One, on the facts, I just want to point out briefly, Mr. Hines was removed as co-executor, and I think that was a factor in this particular case. And the work he did afterwards, as was conceded, I don't think I need to belabor that. What I want to do is touch on a couple examples. I think the biggest thing the court, my whole, as an employee representing the executive of the state, the court did not abuse its discretion in ruling the way it did, because all you have to do is look at page 225, the claim filed by Charles Hines. You look at that, and you're going to go, what? That's what this case is about. And let me briefly comment on that. As the court is aware, Mr. Hines, as an attorney, is charging $150 an hour for co-executor duties. I asked him at the hearing, I said, now, you're testifying that your fees, your claim that you filed is as co-executor, not as an attorney. And it was, quote, I never acted as an attorney for the estate. His entire claim was based upon acting as a co-executor. He got a benefit. As counsel pointed out, our expert gave him a few more hours as an attorney, and more importantly, he gave him $150 an hour for things he thought that really may involve being an attorney. That is, talk to the co-executor Susan Ford when the estate was open, file the will, et cetera. That's something, though, Mr. Hines says, I'm not an attorney. I'm just doing it as a co-executor. He got the benefit of the doubtless case. There were hours that were allowed to him. I had $150 for legal work. There was no expert retained by him to refute that. Counsel pointed out that, well, geez, even the expert cut his time down and shouldn't have, et cetera. Bottom line is the expert is exactly that. He gives his expert testimony. It was the court who heard the evidence. The court is the one who determined how much time he was going to award and at what hourly rate. Remember, what's interesting, we pay a lot of lip service to the standard of review. The standard of review, did the court abuse its discretion? Is it against the manifest way? Is it de novo? This, for the first time, rang a bell with me. This points out why the standard of review is important. The standard of review is important in this case because it's abuse of discretion. Is it judge's order beyond all reason? Does it have any basis in law? That's what it's about, and it certainly does. The court was more than within reason in ruling the way it did on this case. Other than Mr. Ballard's testimony, what other evidence was presented to the trial court? The evidence was you had Ballard, you had Susan Ford, who testified, and Charles, Charlie Hines. Did he testify? Yes. Charlie? Yeah, he testified on his own behalf. Charlie, Susan, the expert. And Judge, I'm embarrassed to say, I don't know if we had, we may have one more, but I don't think so. Those were the key witnesses. Talking about claims, why this was cut down from 94,000 down to about 27,000, let me give you an example. The counsel mentioned this idea about the house inspections. Again, we're talking about $150 an hour as an executor. I asked him, I said, okay, you bill one hour to drive by a house. He did that on 41 occasions, 41 separate entries. Now, what he did, luckily, in some of these entries, it would be a blocked entry. He had 20 entries, and one of them would be a drive-by and charged 10 hours. Well, he can't tell what it is. Unfortunately, or fortunately for us, he has 41 solo entries where he charges an hour to drive by at $150. He has 27 entries, same entries, an hour and a half to do the same thing. So we know out of those 68 entries, he's charging an hour to an hour and a half each time to drive by. Now, I asked Mr. Hines, to give you an idea of the type of individual we're dealing with. I asked him, I said, Mr. Hines, you live in town. I know where your office is. You obviously know where your office is. You know where the residence or the estate or the home is. Why don't you tell me the distance between your office and the house that you had to drive by and spend an hour and a half to go to? He refused to answer. So I did it about four or five more times. Finally, he got his ass break and said, I don't know. I thought that was kind of interesting. So I called Susan Ford to the stand, and I asked Susan, I said, would you tell the court what the distance is? She knows because she went out the night before. It's one mile, exactly, one mile. I said, Susan, tell the court how many minutes or hours it took you to drive that one hour. Two minutes, 35 seconds. Five minutes drive from Charlie Hines' office to the house and back. Give him the benefit of the doubt. Drive by. It's not go inside with a flashlight, inspect and all that. Drive by. As counsel pointed out, you don't want the grass on it. But let me also add, you'll see in the record, the next door neighbor was hired by Susan Ford to take care of that. The next door neighbor was keeping an eye on the house during this entire period of time. So he's charging to go drive by, he's charging an hour to an hour and a half for something that could take five to ten minutes. I think the court was well within its discretion to lower that fee, despite what any expert may have said or not said about that. That total, in my calculations, he charged $20,000 to the estate for his drive-bys. The amount of time charged, that's another factor. In this case, the court did allow, based upon the expert testimony, did allow Mr. Hines some attorney fee time at $150,000. He didn't ask for it. He said, I'm just doing it as an executive. Everything is $150,000 as an executive. It wasn't. The court found it was $20,000 for executive, but $150,000 for the attorney fee. But what's interesting, again, you use common sense. The court found, for example, on one entry, I'll just, we can go through that, all those entries. I just picked one out the other day. August 10, 2005, six and a half hours he charges the estate to talk to Susan Ford, do a memo to the file, the notice of publication, he got that back from the newspaper, a receipt, and then he sends it on to the court for filing. I asked Susan at the time of the hearing, I said, how long did you talk to Mr. Hines on August 10, 2005? She said, I don't remember. I said, it was approximately an hour. So we have six and a half hours charged for an hour of conversation, which is important. We're not belittling that. That's important on this. Five and a half hours to do what? Open up your mail, review a receipt, do a memo to the file. It's entries like that I think the court and the expert were justified in stating that that's way too much. The other two points I really need not cover. We've covered the bond. That's an issue. What troubles me, though, this whole thing with this bond issue is Mr. Hines is filing a claim, an attorney who's practiced in this area for years is filing a claim with the estate saying I'm entitled to $7,200 some odd for a surety bond that was never required and he never produced anything. Where's your check that you paid for the surety bond? Where's the surety bond? Nothing there. It was just testimonial. That's what bothers me more than anything is that he's making a claim for something he did not actually have to do. And the final point I want to make is although the counsel conceded, I believe that after he was removed as executive he couldn't charge, the point was that was part of his fee, but for us catching that, he would have been asking for $94,000 or $97,000, 155 hours, my calculations, for work after he was removed and he had the audacity to file a claim against the estate. And what is even more egregious in this whole matter is these were for things for himself, preparing the claim against the estate, traveling to the courthouse to look at a DACA entry. And what I thought was interesting in the cross-examination, Mr. Hines, I want to end on this note, is that in this supplemental claim then, adding another $500 after he had been removed, he put down weeks before the hearing, charged six hours for a hearing on the claim. He projected before there was even a hearing what the amount should be when he filed it. Bottom line is I think the evidence clearly establishes that the trial court did not abuse its discretion. The decision was well within the bounds of reason, supported by legal principles, and for that the appellee is asking that the court confirm the order of the trial court awarding fees to Mr. Hines. Thank you, Your Honor. Thank you, counsel. Counsel? Just a couple of paragraphs. I think mostly addressing the question of the executor fee and the example of the physicist or heart surgeon or whoever. Law professor. Law professor, obviously. But in any event, I think you can't take all of the executor functions and put them on the same plane as driving by the house and saying that that could be done by a high school kid. I think some of the functions an executor, I know some of the functions an executor performs are functions that require more knowledge than simply driving by a house, and that's where the $20 an hour seems to me to be problematic. It's putting them all on one side spits off kind of thing, and I think some of them warrant more money. I do think on some level the person's education and expectations has some relevance. It obviously can't be outcome determinative. We can't just give him $400 an hour because that's what he billed or something. But I do think to give him $20 an hour, keeping in mind a myriad of other functions, and then cutting down the hours with some of those increases that are nothing but rounding, conceivably obviously to his benefit when he did it, I think that's what starts to become arbitrary. And there's nothing I was looking at again real quick to see where that $20 came from. And I don't see Mr. Dallin didn't allude to anything, and I never saw anything either. It just came out of the air. One number's as good as any, and so I think that's where the abusive discussion comes in. Thank you. Thank you, counsel. We appreciate the briefs and arguments of both counsel. We'll take the matter under advisement.